UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| HAKEEM COLEMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. 14-13928-LTS |
| | ) | |
| EDWARD DOLAN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

MEMORANDUM AND ORDER ON PETITION
FOR WRIT OF HABEAS CORPUS (DOC. NO. 1)

October 23, 2017

SOROKIN, J.

Hakeem Coleman, who currently is serving a period of probation after convictions for

gun and traffic offenses, has filed a counseled petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. Doc. No. 1.[1] Coleman raises two challenges to his gun-related convictions – one

to the sufficiency of evidence that he possessed the firearm in question, and one to the

constitutionality of the Massachusetts statute pursuant to which he was charged. Id. at 5, 7. The

respondent has opposed the petition, arguing Coleman's claims are meritless. For the reasons

that follow, the petition is DENIED.

I.      BACKGROUND

On March 13, 2011, following a jury trial in Boston Municipal Court, Coleman was

convicted of carrying a firearm without a license, carrying a loaded weapon, and operating a

---

[1] Citations to documents available on the Court's electronic docket will reference the assigned
docket number and the page number appearing in the header appended to the top of each page.

vehicle with a suspended license.  Doc. No. 1 at 1-2.  He received consecutive two-and-one-half-year sentences of incarceration on the gun charges, with the second sentence suspended.  Id. at 1; S.A. at 618-19.[2]  The charges arose from a car stop.  Around 1:00 a.m. on September 18, 2009, Coleman was driving alone in his girlfriend's car.  Commonwealth v. Coleman, 988 N.E.2d 876, 2013 WL 2436468, at *1 (Mass. App. Ct. 2013) (unpublished).  Police stopped the car after noticing broken tail and brake lights.  Id.  When they ran his name to determine the status of his driver's license, the officers learned Coleman had an arrest warrant for failing to appear for jury duty.  Id.  A loaded gun was found in the unlocked glove compartment during an inventory search of the car.  Id.  Coleman had no license to carry a firearm.  Id.

At trial, the officers who stopped and arrested Coleman testified that he appeared nervous throughout their encounter with him, and that his hands appeared to be shaking during the inventory search of the car.  Id.  Coleman's girlfriend testified that Coleman had borrowed her car around 6:00 p.m. on September 17, 2009, and that she had removed her belongings from the glove compartment before giving him the keys.  Id.  She said she did not own a gun and had not seen one in the glove compartment that evening.  Id.

Coleman also testified.  According to him, he had borrowed the car in order to attend a fundraising event held to raise money for funeral expenses of a friend who had died recently.  Id.; S.A. at 479.  He testified that, after the event, he had agreed to give two other men who also had known his friend a ride to the Orchard Park Housing Projects.  Coleman, 2013 WL 2436468, at *1; S.A. at 482-83.  Coleman said he left the two men alone in the car for a few minutes while he spoke with another friend before leaving the parking lot.  Coleman, 2013 WL 2436468, at *1;

---

[2] The respondent has filed a Supplemental Answer (cited herein as "S.A.") containing the state-court record in two bound volumes.  Doc. No. 15.

S.A. at 484-87.  He was stopped by police officers while driving home, after dropping the two

men off as promised.  Coleman, 2013 WL 2436468, at *1; S.A. at 487.

The defense argued the evidence was insufficient to establish beyond a reasonable doubt

that Coleman knew of – let alone constructively possessed – the gun, and that it likely had been

placed in the glove compartment by one of the men he had driven home from the fundraiser.

S.A. at 518-26; see Coleman, 2013 WL 2436468, at *3 (rejecting direct appeal challenge to

sufficiency of evidence showing constructive possession).  The jury disagreed, finding Coleman

guilty of both charges arising from his possession of the gun.  S.A. at 613-14.

Coleman timely appealed, and the Massachusetts Appeals Court ("MAC") affirmed in an

unpublished June 6, 2013 decision.  Coleman, 2013 WL 2436468, at *1.  The MAC rejected

Coleman's challenge to the sufficiency of evidence establishing constructive possession, as well

as a Second Amendment challenge to the Massachusetts firearms statute.  Id. at *3-4.  The

Supreme Judicial Court ("SJC") denied Coleman's application for further review on July 25,

2013.  Commonwealth v. Coleman, 991 N.E.2d 187 (Mass. 2013) (table).  He did not seek

certiorari before the United States Supreme Court.

Coleman filed a timely, counseled federal habeas petition in this Court on October 21,

2014 raising two claims:

1)      There was insufficient evidence from which a jury could find beyond a reasonable
        doubt that Coleman possessed a firearm, and the MAC's rejection of this
        sufficiency claim was objectively unreasonable; and

2)      The application of Massachusetts's firearms laws violated Coleman's
        constitutional right to bear arms by placing on him the burden of proving that he
        was licensed to carry a firearm, and the MAC's rejection of this Second
        Amendment claim was objectively unreasonable.

3

Doc. No. 1 at 5, 7; see also Doc. No. 45 at 9-19. Coleman's claims have been fully briefed.[3]

II.      LEGAL STANDARDS

     A.      General Habeas Review

Federal district courts may not grant a writ of habeas corpus unless they find that the state court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In other words, state court decisions merit substantial deference. As the Supreme Court repeatedly has emphasized, such deference results in a federal habeas corpus standard that is "difficult to meet," with the petitioner carrying a heavy burden of proof. Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (emphasizing the "formidable barrier" faced by federal habeas petitioner where claims already were adjudicated in state court, and limiting relief to cases of "extreme malfunctions" by state criminal justice systems). If a state court's decision "was reasonable, it cannot be disturbed" on habeas review. Hardy v. Cross, 565 U.S. 65, 72 (2011) (per curiam); see Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam) (noting "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong"); Parker v.

_____

[3] At the parties' request, briefing and resolution of Coleman's petition were stayed pending the disposition by the First Circuit of another case raising identical Second Amendment challenges to Massachusetts's firearms statutes. See Doc. Nos. 16, 17 (requesting and granting stay pending decision in Powell v. Tompkins, 783 F.3d 332 (1st Cir. 2015)).

Matthews, 567 U.S. 37, 38 (2012) (per curiam) (admonishing federal habeas courts not to "second-guess the reasonable decisions of state courts" (quotation marks omitted)).

Here, Coleman asserts only that the MAC's rulings "involved an unreasonable application of clearly established Supreme Court law"; he does not claim they were "contrary to" clearly established Supreme Court precedent, nor does he argue the state courts based their decisions on "an unreasonable factual determination." Doc. No. 45 at 8. A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams v. Taylor, 529 U.S. 362, 407-08 (2000). When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state court's application of clearly established federal law was objectively unreasonable."[4] Id. at 409.

An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply. Id. at 407. It cannot, however, include a decision by a state court not "to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

---

[4] In a string of recent decisions summarily reversing grants of habeas relief by lower federal courts, the Supreme Court has "repeatedly emphasized" that "circuit precedent does not constitute 'clearly established Federal law'" for purposes of § 2254(d)(1). Glebe v. Frost, 135 S. Ct. 429, 431 (2014); see also, e.g., Lopez v. Smith, 135 S. Ct. 1, 4 (2014) (warning against using circuit precedent to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced" (quotation marks omitted)).

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). Rather, relief is available only where a state court's "determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam) (emphasizing that a habeas court "may not overturn a state court decision . . . simply because the federal court disagrees with [it]"); Richter, 562 U.S. at 103 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). Put another way, relief under § 2254 is warranted only if a petitioner shows that the state court's rejection of his claim was "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible options." Sanna v. Dipaolo, 265 F.3d 1, 13 (1st Cir. 2001) (quotation marks omitted).

III.     DISCUSSION

Coleman is not entitled to federal habeas relief. First, even if this is not a case in which the proof of Coleman's constructive possession of the relevant firearm (and, thus, his guilt) was overwhelming, the evidence against him was not so insubstantial as to render the jury's verdict or the MAC's affirmance unreasonable. And second, Coleman's allegation that the Massachusetts statutes pursuant to which he was convicted infringe his right to bear arms is contrary to a binding decision by the First Circuit.

A.    Sufficiency

Coleman's first claim attacks the sufficiency of evidence demonstrating he constructively possessed the firearm found in the glove compartment of the car.  Coleman argues his mere presence in the car was insufficient, that "undisputed evidence" showed he generally did not use the glove compartment when borrowing his girlfriend's car, that the nervousness officers described had another explanation (i.e., he was driving without a valid license and had an active arrest warrant), and that "undisputed evidence" revealed other individuals had access to the glove compartment before Coleman was stopped.  Doc. No. 45 at 11-14.  In Coleman's view, "the evidence tying [him] to the firearm was in equipoise with the evidence implicating [his] passengers" and, thus, was "necessarily insufficient."  Id. at 14.

The MAC considered and rejected Coleman's sufficiency claim on its merits, 2013 WL 2436468, at *3, and the respondent argues that ruling was reasonable in light of clearly established federal law.  Doc. No. 48 at 14-18.  According to the MAC, "sufficient evidence supplemented the evidence of [Coleman's] presence and established his constructive possession of the handgun."  2013 WL 2436468, at *3.  The MAC cited evidence that Coleman "was the sole occupant of the vehicle," that "he appeared nervous" during the search of the car, and that no gun had been in the glove compartment when Coleman borrowed the car hours earlier.  Id.  In addition, the MAC emphasized that "the jury w[as] free to discount as implausible the defendant's theory that [one of his passengers] must have left the handgun in the glove compartment."  Id.

The MAC's determination was not an unreasonable application of clearly established federal law.  Because this Court considers Coleman's claim within the limited bounds of habeas review, the Court "do[es] not ask, as [it] might on direct review of a conviction in federal court,

whether the evidence was constitutionally sufficient. [It] ask[s], instead, whether the [MAC's] ruling that the evidence is constitutionally sufficient was itself 'unreasonable.'" Winfield v. O'Brien, 775 F.3d 1, 8 (1st Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1)). The relevant "clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), for purposes of a sufficiency challenge is Jackson v. Virginia, 443 U.S. 307 (1979). See Winfield, 775 F.3d at 7. Under Jackson, a petitioner prevails on a sufficiency-of-evidence claim only if he demonstrates that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. It is well settled that a "criminal conviction may be supported by circumstantial evidence alone." Linton v. Saba, 812 F.3d 112, 123 (1st Cir. 2016).

"A federal court reviewing a habeas petition raising a Jackson claim must apply a 'twice-deferential standard.'" Id. (quoting Parker, 567 U.S. at 43). A state court's rejection of a sufficiency challenge may be overturned on habeas review only if it was objectively unreasonable. Id. "Where any reasonable jurist would conclude that evidence viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence," a habeas court "must reverse because equipoise is tantamount to reasonable doubt." Id. (quotation marks omitted); but see Winfield, 775 F.3d at 9 (noting "some question" whether the "equipoise" rule is law "determined by the Supreme Court" or, rather, is a "circuit level added refinement"). But Jackson requires "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences [to] presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such

conflicts in favor of the prosecution, and [to] defer to that resolution." 443 U.S. at 326; accord Winfield, 775 F.3d at 9.

After summarizing the trial record, including the evidence adduced by Coleman in his defense, the MAC concluded that the evidence, considered as a whole and "viewed in the light most favorable to the Commonwealth, . . . was sufficient to support the jury's inference of constructive possession." 2013 WL 2436468, at *1, *3. This Court's own review of the record confirms that the MAC's decision was a reasonable one, and was fully consistent with the sufficiency principles articulated in Jackson and cases applying it in the habeas context. Neither the jury's verdict nor the MAC's description of the evidence supporting it rested on an "unreasonable, insupportable, or overly speculative" interpretation of the evidence. O'Laughlin v. O'Brien, 568 F.3d 287, 301 (1st Cir. 2009) (quotation marks omitted).

In particular, the record contains evidence that there was no firearm in the glove compartment when Coleman received the car; that his girlfriend did not own a firearm; that Coleman was the sole occupant of the car at the time of the stop, and that no one else had control of the car throughout the evening;[5] that officers perceived a connection between Coleman's nervousness and the fact that they were searching the car;[6] and that the gun was discovered immediately upon opening the unlocked glove compartment, on top of other items (as opposed to buried beneath items that did not belong to Coleman). From some combination of these facts,

---

[5] According to Coleman's testimony, the only other people who accessed the car were his two passengers, and they were in the car only for a short time. See S.A. at 483-87 (stating that the housing project was only a few minutes from the event, and that the passengers were in the car only a few minutes before leaving the parking lot).

[6] Specifically, an officer implied Coleman appeared increasingly nervous during the search, testifying that Coleman's hands were shaking during the search of the front passenger area, and that Coleman asked during the search if the officers were looking for something in particular. S.A. at 370-71.

the jury inferred Coleman was guilty of possessing the firearm found in the car. In so

concluding, the jury rejected Coleman's testimony that he was unaware of the gun's presence, as

well as his theory that one of his passengers must have left the gun in the glove compartment

while Coleman claimed he was out of the car.[7] It also resolved in the Commonwealth's favor

any conflicting inferences which might have been supported by the evidence regarding

Coleman's knowledge of the gun's presence, his intent to exercise control over the glove

compartment and the gun, and the reason for his nervousness when encountering the police.

This Court is obligated to "defer to [the jury's] resolution" of questions such as these. Winfield,

775 F.3d at 9.

The cases upon which Coleman relies do not justify a finding that the MAC's decision

was unreasonable. The three cases Coleman cites as "com[ing] closest" to his and supporting a

finding in his favor are decisions by federal appellate courts resolving direct appeals of federal

convictions. United States v. Martinez-Rodriguez, 778 F.3d 367, 369 (1st Cir. 2015); United

States v. Crain, 33 F.3d 480, 484 (5th Cir. 1994); United States v. Tolliver, 780 F.2d 1177, 1179

(5th Cir. 1986), vacated on other grounds, Tolliver v. United States, 479 U.S. 1074 (1987); see

also United States v. Ridolfi, 768 F.3d 57, 58 (1st Cir. 2014). They do not involve the additional

level of deference accorded to a state court's decision on habeas review, and they do not turn on

---

[7] The Court notes that the jurors reasonably could have rejected Coleman's testimony that he left
the two passengers, whom he knew only by nicknames, alone in the car before leaving the
fundraiser. That portion of his testimony was not corroborated by another witness, and jurors
were not bound to credit it, particularly if they believed he lied about his own awareness of the
gun's presence. Even if they believed the men had been alone in the car for a minute or two, as
Coleman claimed, it was reasonable for jurors to conclude it was unlikely that a passenger had
placed a gun in the glove compartment and then forgotten to remove it – or intentionally elected
not to do so – when exiting the car.

a specific legal rule announced by the Supreme Court that mandates relief for Coleman here. See Mirzayance, 556 U.S. at 122.

Moreover, each case is factually distinguishable from Coleman's (as Coleman concedes, Doc. No. 45 at 14), and some even contain language supporting the MAC's decision here. See Martinez-Rodriguez, 778 F.3d at 372-73 (finding mere presence and apparent nervousness insufficient to establish one defendant's constructive possession of drugs *found in his co-defendant's pocket*, where nervousness was attributable to the fact that the defendant *actually possessed a firearm*); Crain, 33 F.3d at 482, 486 (finding insufficient evidence that driver of borrowed car constructively possessed drugs found beneath the passenger seat where the evidence showed that a passenger *in the car at the time of the traffic stop had been seen hiding the drugs* as police initiated the stop); Tolliver, 780 F.2d at 1184 (finding evidence insufficient to establish constructive possession *with intent to deliver* drugs where the car was linked to a more culpable co-defendant in a drug-dealing conspiracy, but suggesting in dicta that the evidence *might have supported a charge of simple possession* of drugs by relevant defendants); see also Ridolfi, 768 F.3d at 63 (reasoning defendant's "significant control and dominion over his cousin's vehicle which included [the relevant contraband] in the trunk, is pertinent to his possession of [that contraband]").

Accordingly, Coleman has not carried his heavy burden of establishing that the MAC's rejection of his sufficiency claim was "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible options." Sanna, 265 F.3d at 13. His first claim, therefore, fails.

B. <u>Second Amendment Claims</u>

In his second claim, Coleman lodges constitutional attacks against the Massachusetts criminal statutes under which he was convicted. <u>See</u> Doc. No. 45 at 15 (asserting a due process violation based on Massachusetts law placing the burden on defendants in gun cases to prove they are licensed, and a Second Amendment violation based on argument that Massachusetts law "criminalizes the mere possession of a firearm"). The MAC rejected these constitutional claims on their merits. 2013 WL 2436468, at *3-4. As the respondent urges and Coleman acknowledges, any assertion that the MAC's decision was contrary to, or an unreasonable application of, clearly established federal law is "currently foreclosed by binding First Circuit precedent." Doc. No. 45 at 16; Doc. No. 48 at 18, 22-23, 26. The Court need not discuss the constitutional questions presented in Coleman's second claim in detail; the First Circuit already has done so when confronted by identical challenges to the same Massachusetts statutory regime. <u>See</u> <u>Powell</u>, 783 F.3d at 337-49 (considering and rejecting the same due process and Second Amendment arguments pressed here). It suffices to incorporate by reference the First Circuit's thorough and binding analysis, <u>id.</u>, which renders Coleman's second claim meritless.

IV. <u>CONCLUSION</u>

For the foregoing reasons, Coleman's habeas petition is DENIED.[8]

SO ORDERED.

/s/ Leo T. Sorokin<br>United States District Judge

---

[8] As "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), no certificate of appealability shall issue. The state court's evaluation of Coleman's sufficiency claim was both reasonable and consistent with federal law, as more fully explained above. His Second Amendment claim is admittedly in direct conflict with a recent, binding decision by the First Circuit. Accordingly, Coleman is not entitled to a certificate of appealability.